HENRIETTA S. CHEW, Administratrix of SAMUEL CHEW, *vs.* JAMES M. BUCHANAN, and others.

*Distribution of the proceeds of Mortgaged property— Right of Priority of the holder of the First mortgage note.*

In determining questions of priority in the distribution of funds in Court, there is an universal concurrence in the principle, that the intention of the parties contracting must govern, where that can be discovered, unless in contravention of some rule of law.

Where the meaning of the parties has been expressed, or can be inferred from their acts, there has been no difficulty in disposing of the question.

No particular form of assignment, indicative of preference, is essential.

A being indebted to B, gave to her three several notes, for sums amounting together to the whole debt, and payable respectively, three, four and five years after date; and at the same time executed a mortgage to secure the payment of said debt, at the respective periods limited by the notes. On the same day B assigned to C the note first maturing, and also her interest in said mortgage, to be held by C, in as full and ample a manner, to the extent of the sum expressed in said note, with all interest which might accrue thereon, and costs, charges and expenses incident thereto, and so that the said C should have priority of lien therefor, as the said B might or could have held the same, if said assignment had not been executed. This assignment was duly acknowledged and recorded, and by subsequent assignments at different times, duly acknowledged and recorded, the other notes with a *pro tanto* interest in the mortgage, were assigned by B to other parties. The mortgaged property having been sold, under proceedings, for a foreclosure instituted by C, the net proceeds of sale proved insufficient to pay the first note, with interest thereon. HELD:

That in distributing the net proceeds of sale, C was entitled to a preference to the whole extent of his claim.

APPEAL from the Circuit Court for Anne Arundel County, in Equity.

In 1857, John S. Tyson and Rachel, his wife, sold and conveyed to Isaac Simmons several contiguous parcels of

land, the maiden property of Mrs. Tyson, and to secure the residue of the purchase money due thereon, $8,728.75, Simmons and wife, on the 2d of March, 1857, executed a mortgage of the same property to Mrs. Tyson, and delivered to her three promissory notes, payable to her order, and bearing even date with the morgage, one for $2,300, one for $3,214.37 and the other for $3,214.38, payable, respectively, in three, four and five years, and all bearing interest from date. The condition of the mortgage was for the payment of the said sum of $8,728.75, with legal interest thereon, at the respective periods, limited by the said notes for the payment of the same. On the same day the mortgage was executed, Mrs. Tyson and her husband assigned the first note to Samuel Chew, and executed to him a separate assignment of the mortgage, which was duly acknowledged and recorded on the 6th of March, 1857; on the 3d of August following, Tyson and wife assigned $2,000 of the second note to the appellee, James M. Buchanan, and at the same time executed to him an assignment of this mortgage, as also of another mortgage upon certain parcels of ground in the city of Baltimore, which assignment was also duly acknowledged and recorded on the 14th of August, 1857; on the 5th of June, 1860, they assigned the residue of the second note, and the third note entire, to the appellee, John R. Clark, and executed to him an assignment of these same mortgages, which was recorded on the 20th of June, 1860. These several notes were assigned and endorsed without recourse.

On the 24th of October, 1860, the first note having matured and not having been paid, Chew filed his bill for a sale of the mortgaged property; subsequently, on the 5th of November, 1862, after all the notes had matured, an amended bill was filed, to which all the assignees were parties. To these bills answers were filed, and on the 23d of January, 1864, a decree for a sale was passed, reserving for future decision all questions as to priority of payment out of the proceeds of sale. The land was sold by the trustees on the

3d of February, 1865, for $3,178.14, a sum insufficient, after payment of costs, expenses and trustees' commissions, to pay the principal and interest due on the first note. The sale was duly ratified. The auditor stated two accounts, A and B; by the former, after the payment of costs and commissions, he applied the entire residue towards the payment of the first note, assigned to Chew, leaving a balance due thereon of $677.22; by the latter, the net proceeds of sale were distributed amongst the several assignees and Mrs. Tyson, ratably. To account B, the administratrix of Chew, who had become a party after the death of her husband, excepted, claiming that she was entitled, as the holder of the first note, to the entire net proceeds of the sale by way of priority, as allowed by account A. Buchanan and Clark excepted to account A, claiming that the net proceeds of sale should be applied to their claims and the claim of Chew's estate, in proportion to the amounts respectively due to each of them; and Clark also excepted to account B, in so far as it allowed any portion of the proceeds of the sale to the claim of Mrs. Tyson.

The Court, by an order of the 23d of April, 1868, overruled Mrs. Chew's exceptions to account B, and sustained the exceptions of Buchanan and Clark to account A, and the exceptions of Clark to account B, and remanded the cause to the auditor, for the purpose of stating an account in conformity with the principles so determined; the account was so stated, and by an order of the 5th of May, 1868, the same was ratified. From these orders Mrs. Chew appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT and ROBINSON, J.

*Samuel Snowden,* for the appellant:

When different debts or notes are secured by the same mortgage, priority of lien depends on the order of time at which the debts or notes reach maturity, and preference will be given to the debt which first becomes payable. *Hough vs.*

24 v. 30

*Osborne, 7 Ind.,* 140 ; *Stanley vs. Beatty, 4 Ind.,* 134 ; *Wilson vs. Hayward, 6 Fla.,* 171 ; *Hinds vs. Mooers, 11 Iowa,* 211 ; *Thompson vs. Field, 38 Mo.,* 320 ; *Mitchell vs. Ladew, 36 Mo.,* 526 ; *Bank of U. S. vs. Singer, 13 Ohio,* 240 ; *Harris vs. Harlan, 14 Ind.,* 439 ; *State Bank vs. Tweedy, 8 Blackf.* 447 ; *Wood vs. Trask, 7 Wisconsin,* 566 ; *Marine Bank vs. International Bank, 9 Wisconsin,* 57 ; *Hunt vs. Stiles, 10 N. H.,* 466 ; *Vansant vs. Allmon, 23 Ill.,* 30 ; *McVay vs. Bloodgood, 9 Porter,* 547.

The first assignee of the mortgage with a part of the debt secured thereby, is entitled to have the mortgage security applied to the satisfaction of the debt assigned to him, to the exclusion of those claiming under subsequent assignments. *Bryant vs. Damon, 6 Gray,* 564 ; *Mechanics' Bank vs. Bank of Niagara, 9 Wend,* 410 ; *Cullum vs. Erwin, 4 Ala.,* 452 ; *Solzman vs. His Creditors, 2 Rob. (La.)* 241 ; *Wright vs. Parker, 2 Aiken, (Vt.)* 212 ; *Gwathmeys vs. Ragland, 1 Rand.,* 466 ; *Warden vs. Adams, 15 Mass.,* 225 ; *Pattison vs. Hull, 9 Cowen,* 747.

The assignment from the mortgagee to Chew was duly acknowledged and recorded *before* the assignment to Buchanan and Clark, and under the decisions referred to, Chew is entitled to priority. These decisions are founded upon the undisputed principle of law, that the purchaser of a *chose in action* cannot be in a better position than the person from whom he purchased, and as the assignment clothed the assignee with the right to *the whole security* for the satisfaction of the claim assigned to him, as against the assignor so no subsequent assignee could acquire any greater right than his assignee had, "for it would be contrary to good faith that the vendor of a claim, after receiving the price of it from the assignee, should *by his own act* prevent the latter from receiving the sum he has paid." *Solzman vs. His Creditors, 2 Rob.* 243 ; *Griffith vs. Frederick Co. Bank, 6 G & J.,* 424.

The question is one of intention or contract, and it is sufficient if it appear to be the clear and certain intention of the

parties to convey the right. *Bank of England vs. Tarleton,* 23 *Miss.*, 173. The assignment to Chew, shows the clear and certain intention of the parties to convey to Chew, the whole security for the payment of his claims.

*Frank. H. Stockett,* for the appellees:

When a mortgage is given to secure the payment of *several* notes maturing at *different times,* which are afterwards at *different* times assigned to several parties, and the proceeds of the sale of the mortgaged property are not sufficient to pay all the notes, the question arises, whether the assignees will be entitled to *priority* of payment; first, in the order in which the notes *matured;* or secondly, in the order in which the *assignments* were made; or thirdly, whether the proceeds of the sale are to be distributed *ratably* to the respective holders of the notes according to the amounts due to each of them?

In the Courts of some of the States, the proceeds are distributed to those persons holding the notes according to the order of time *in which they fall due,* as in *Indiana, State Bank vs. Tweedy,* 8 *Black.,* 447; *Harris vs. Harlem,* 14 *Ind.,* 439. In Wisconsin, *Wood vs. Trask,* 7 *Wis.,* 566; *and Marine Bank vs. International Bank,* 9 *Wis.,* 57. In Florida, *Wilson vs. Hayward,* 6 *Flor.,* 171. In Iowa, in the case of *Hinds vs. Mooers,* 11 *Iowa,* 211; and in Illinois, in the case of *Vansant vs. Allmon.* 23 *Ill.,* 30.

In other of the States, it has been determined that the *priority* of *the assignment,* without reference to the maturity of the notes, determines the preference in payment, unless the assignor at the time of the assignment, and by express words gave preference to one or more of the notes, as in the case of *Cullum vs. Erwin,* 4 *Ala.,* 452.

These decisions, however, are in conflict with the rights of the parties, and are not sustained by the principles of justice and equity which should govern the dealings between parties in all such transactions, and which have been clearly announced in the decisions by the Courts in a number of other

States, and there should be no difficulty in determining that the fund should be distributed *ratably*.

The debt, which is the *corpus* of the assignment is *one*, and the security is *one*, and is equally as applicable to the last note maturing as to the first, for though *solvendum in futuro*, it is *debitum in presenti*. On an assignment of a mortgage, the *thing* sold is the *debt*, and the mortgage passes as an *appurtenant* to the debt, and these are incapable of a separate and independent alienation. *Pratt vs. Vanwyck's Ex's*, 5 *G. & J.*, 495; *Clark vs. Levering*, 1 *Md. Ch. Dec.*, 178; *Ohio Life Ins. & Trust Co. vs. Winn and Ross*, 2 *Md. Ch. Dec.*, 25. The same principle is fully illustrated in the cases of *Johnson vs. Hart*, 3 *John. Ca.*, 329; *Jackson vs. Rogers*, 4 *John. Ca.*, 43; *Aymar vs. Bill*, 5 *John's Ch. Rep.*, 570; *Bell vs. Morse*, 6 *N. H.*, 205; *Southerin vs. Mendum*, 5 *N. H.*, 420.

So clearly does this enure to the assignee that the right to all the benefit of the mortgage results to the holder of the debt, though the assignment was not in *writing*, and though the assignee of the debt did not at the time know of the existence of the mortgage. *Kraft vs. Webster*, 4 *Rawle*, 242. The assignees are privileged creditors, each having a lien on the *whole* property or fund in equal rank and degree, and are entitled equally to look to the whole fund as security, and should be paid *pari passu*. In the following cases, the Courts have fully sustained these views, and it is believed the reasons given for the conclusion so reached will be found conclusive. In Pennsylvania, the first case reported is *Donly, Assignee of McKean vs. Hays*, 17 *Sarg. & Rawle*, 400, where the proceeds of the sale of mortgaged property fell short of the whole mortgage debt, the assignees, and even the *mortgagee* who in that case had retained a portion of the debt, were entitled to a *pro rata* dividend of the proceeds. This doctrine was affirmed in the subsequent case of *Betz vs. Green*, 1 *Penn.*, 280. The cases in that State have been followed by a number of other decisions to the same effect, the last of which, *Hancock's Appeal*, 34 *Penn.*, 155, has finally settled the law

in that State in favor of a *pro rata* distribution, irrespective of any priority as to the *maturity* of the notes or the *date* of *assignment.*

The cases of *Bank of U. S. vs. Singer*, 13 *Ohio*, 240, and *Bushfield vs. Meyer*, 10 *Ohio, N. S.*, 334, establish the same rule in Ohio.

In Mississippi, the same rule obtains, as clearly appears by the cases of *Parker vs. Mercer*, 6 *How.*, 320; *Cage vs. Iler*, 5 *Smedes & Marsh*, 410; *Henderson vs. Herrod*, 10 *Smedes & Marsh.*, 631; *Jefferson College vs. Prentiss*, 29 *Miss.*, 46.

The case of *Toby vs. Ewing*, 1 *Humph.*, 537, *in Tennessee;* *Anderson vs. Baumgartner*, 27 *Missouri*, 80; *and Phelan vs. Olney*, 6 *Cal.*, 478, establish the same rule of distribution in all those States.

STEWART, J., delivered the opinion of the Court.

In the decision of the question under this appeal, our conclusion is different from that of the Court below; but we have been much aided by their learning and research in pronouncing their opinion.

Whilst some diversity of practice prevails in different States, in applying rules as to priorities in the distribution of funds in Court, in the absence of satisfactory evidence of the intention of the parties interested, some adopting the *pro rata* rule of distribution—others, the priority of assignment without regard to priority of payment—others, priority in the order of the maturity of the debts without reference to the priority of assignment; there is a universal concurrence in the principle that the intention of the parties contracting, must govern where that can be discovered unless in contravention of some rule of law.  Where the meaning of the parties has been expressed, or can be inferred from their acts, there has been no difficulty in disposing of the question.

Their intention must be ascertained by the ordinary rules of construction, and the effect of their acts indicating their

purpose, is equivalent to express provision. No particular form of assignment indicative of preference, is essential.

Such we infer was the opinion of the Court below, with which we fully concur, but they did not find any evidence of preference in this case in which we cannot agree with them.

This case is relieved from all embarrassment from conflicting rules, because not only is the fact of a preference fairly inferrible from the acts of the parties, but they have so expressly declared.

In the mortgage deed from Simmons and wife to Mrs. Tyson, bearing date the 2d March, 1857, it is recited that Simmons is indebted to Mrs. T. in the sum of $8,728.75, for which he has delivered to her three promissory notes of the same date, drawn by Simmons to her order; one for $2,300, payable in three years; one for $3,214.37, payable in four years; and the other for $3,214.38, payable in five years; all of them to bear interest payable annually; that it was understood these notes should be secured by the mortgage, which contains the proviso, that if Simmons shall pay Mrs. Tyson, or her assigns, the said sum with the interest, at the *respective periods limited by the notes,* then the mortgage was to be null; and it is further declared to be the agreement of the parties, *that until default be made in the payment of the mortgage debt,* or of *some part thereof,* Simmons was to retain the possession of the property conveyed. The mortgage was thus given to secure the payment of the debt *indicated by the notes at the time specified,* and in case of *failure to pay any part,* according to the terms stipulated, *Mrs. Tyson had the right to the possession of the property as mortgagee, and which right was transferred to Chew by the first assignment to him.*

On the same day Mrs. Tyson, together with Mr. Tyson, executed to Chew an assignment of this mortgage, referring in the same to the previous mortgage given to secure the payment of the *respective amounts* mentioned in the notes, and reciting that Tyson and wife have assigned to Chew the note for $2,300, being the *first note,* payable in three

years, and for the purpose of granting to him the *full bene-fit of the security held under the mortgage*, it conveys to Chew *all the right in the mortgage of Tyson and wife, to the extent of the sum of* $2,300, with interest, cost, charges, expenses, &c., *so that the said Samuel Chew shall have priority of lien there-for;* as the said Rachel Tyson might or could have held the same, if this assignment had not been executed." The latter part of this instrument is the usual formality, and has refer-ence to the general interest Mrs. Tyson held in the property, and should be read as if immediately following the preceding words: "in as full and ample manner," to give to it its proper meaning and application. It was designed to denote her interest in the property conveyed by the mortgage, and *was not intended to limit or qualify* the express lien secured to Chew by the language, "and so that the said Samuel Chew shall have priority of lien," to the extent of his note.

It was, undoubtedly, the design of the parties, by such words, to afford to Chew a *prior lien* over Mrs. Tyson, as the holder of the other notes, and her subsequent assignees of said notes could take no greater interest in them than Mrs. Tyson, the assignor, held. These words were inserted, we must presume, for a substantive purpose, and to give to them the meaning we have ascribed, it is not necessary to invoke the rule of construction, that instruments are to be taken more strongly against the grantor. It is the natural and obvious import of the expressions—otherwise, they are mere surplus-age—whereas all the words should have meaning, if consistent with the scope of the instrument.

This assignment, by the understanding of the parties, con-ferred upon Chew a lien, in advance of all others, upon the mortgaged property, for the payment of the note assigned to him. This was Chew's position on the 2d of March, 1857. It is admitted that this assignment to him was duly acknow-ledged and recorded.

On the 3d of August, 1857, Buchanan took an assignment of the same mortgage, so far as Tyson and wife could convey

it, which recites the mortgage from Simmons and wife to Mrs. Tyson, and further recites, that the mortgage was given to secure the payment of $8,728.75, "in the manner therein expressed, agreeably to the tenor of three promissory notes," describing *particularly the times of payment.*

There is no clause giving to him, or undertaking to do so, any *special priority,* but other property is embraced in the assignment for his better security, furnishing additional evidence of the understanding of the parties. Buchanan's assignment was also duly acknowledged and recorded on the 5th of June, 1860; Clark took a similar assignment from Tyson and wife as given to Buchanan, embracing the additional property, to secure the payment of the note assigned to him. There is no clause giving to him any priority. His assignment was also acknowledged and recorded. These parties, thus holding transfers of the mortgage, occupy the relation of three several assignees of the three respective notes, with the security of the mortgage appurtenant thereto, according to the tenor of the assignments. This they would have held as an incident to the transfer of the notes, if there had been no actual assignment of the mortgage.

Under these circumstances, with the indicated understanding of the parties, to which reference has been made, with prior lien given to Chew, there is no doubt of his right to priority of payment, in the fund in Court. Such was the manifest intention of all the parties.

It would do violence to the contract of the parties, and to the principles and practice of Courts of Equity, to permit these various assignees to divide the proceeds of the mortgage property, *pro rata,* when not sufficient to secure payment of all the notes, and thus exclude the *prior lien* of Chew, whose assignment, besides holding the *express lien,* was the *first one made,* and *was first recorded,* and transferred, the note *first due* and payable.

Finding abundant evidence and authority to guide us in disposing of the question of distribution, from the transac-

Chew, Adm'x, *vs.* Buchanan, *et al.*

tions of the parties, it would be superfluous to decide what would have been the effect if there had been no such indication of the agreement of the parties, or to consider the effect of the transfers under our Registry laws.

We think the auditor's account A, giving to Chew the benefit of his preference, should have been ratified, and the case is remanded for further proceedings, in conformity herewith.

*Decree reversed and cause remanded.*

(Decided 12th March, 1869,)

BARTOL, C. J., delivered the following dissenting opinion:

The decision of this case depends entirely upon the construction of the assignment made by Tyson and wife to Samuel Chew. Unless the intention of the parties to that assignment plainly expressed in the instrument, or clearly indicated by their acts as disclosed in the record, was to confer on the assignee a preferred lien or priority for the payment of the note assigned to him, in preference to the other notes secured by the mortgage, then the rule adopted by the Court below, in directing a *pro rata* distribution of the fund among the several assignees, was correct.

I hold the principle in such case to be clear, that different parties holding respectively the several notes, or being entitled to the several instalments or portions of the debt secured by one mortgage, stand in *equali jure;* and if the property conveyed by the mortgage be insufficient to pay the whole debt, they are entitled to participate *pari passu* in the fund.

On that question I concur with the ruling of the Supreme Court of Pennsylvania, in *Donly vs. Hays,* 17 *Serg. & Rawle,* 400, which has been followed by subsequent decisions in that State, and in Ohio, Mississippi, Tennessee, California and Missouri, and which appears to have been recognized also in New York, in *Van Rensellaer vs. Stafford,* 1 *Hop. Ch. R.* 569.

Such rule seems to me to be consistent with reason and justice. Where several parties are interested as part owners

of a claim, secured by a mortgage or other pledge, if the security should prove inadequate to pay them in full, it is equitable that it should be divided among them ratably. This principle appears to me to be applicable to the case of a mortgage to secure an entire debt, payable in instalments. The mortgage is as much a security for the last instalment as the first; and as between the several holders of the security, whether as original parties, or by assignment, there is no equitable ground for preference or priority.

The only qualification to this rule is where the assignor, by guarantee or otherwise, becomes liable to the assignee for the payment of the instalment or part of the debt assigned. In such case the assignor, if he continues to hold the other portion of the debt, would not be allowed to participate in the fund, until the instalment due the assignee has been fully paid.

The effect of a contrary rule would be to lead to a mere circuity of action; for the assignor, thus remaining responsible, would be liable to the assignee for any deficiency, and for that reason would not be permitted to claim any part of the fund to the exclusion of the claim of the assignee.

In this case the assignment from Tyson and wife to Chew was made without recourse; they were in no manner liable as guarantors or sureties for its payment. Chew, as purchaser, became entitled to a part of the claim secured by the mortgage, to the extent of the note for $2,300, and the mortgage was assigned to him *pro tanto;* leaving Tyson and wife entitled to the other notes, and entitled also to participate with him to that extent, in the common security. That right was transferred by the subsequent assignments to Buchanan and Clark.

It is not denied that it was competent for the mortgagees, by the assignment to Chew, to confer on him a priority or preference, which would entitle him to be first paid out of the fund, and postpone to his claim the other notes secured by the mortgage, either in their hands or in the hands of

subsequent assignees; and if such were the force and effect of the assignment to Chew, he is entitled to have the benefit of priority in the distribution of the fund. The duty of the Court is to give effect to the intent of the parties. After a careful examination of the terms of the assignment to Chew, I do not find any such intent expressed in the instrument, or implied by the acts of the parties.

By the assignment of the note for $2,300, the mortgage, being merely incidental or appurtenant thereto, would have passed to the assignee *pro tanto*, without any express assignment of the mortgage itself; this instrument conferred upon Chew no better rights, so far as the question of priority is concerned, than he would have held under the assignment of the note, unless by its terms there was secured to him the right to have priority of payment over the other notes secured by the mortgage. The appellant has contended that such is the effect of the words, " so that the said Samuel Chew shall have priority of lien therefor," found in the assignment. If these words stood alone, without any qualification, they might be susceptible of the construction contended for by the appellant; but they are followed immediately in the same sentence by the words, " as the said Rachel Tyson might or could have held the same, if this assignment had not been made." These last must be construed as limiting or qualifying all the preceding words in the same sentence of which they form a part, and it seems to me to negative any intention to give to Chew, the assignee, any other priority of lien than that which was secured by the mortgage itself, and was held by Tyson the mortgagee.

Taking the whole instrument together, it seems to have been the intention of the parties, that Chew, who had purchased the note and taken it without recourse, relied upon the security of the mortgage to that extent, and was content to take such priority of lien as was secured by the mortgage, and held by the mortgagee. If the intention had been to give to him a prior claim or lien for the note so assigned to

him, over the other notes secured by the mortgage, I think more plain and appropriate words would have been used.

Being of opinion that the construction given to the assignment by the Court below was correct, I think the decree ought to be affirmed.