HARRISON DIXON *vs.* DRUSILLA CLAYVILLE, Administratrix of LITTLETON CLAYVILLE.

*Evidence of a Prior intention, Inadmissible to qualify a Subsequent written Contract—Inadmissibility of Parol evidence to vary a Written contract—How the intention of parties to an Assignment, is to be ascertained—Assignor of overdue Mortgage note, not liable as a Guarantor—Assignment of an Overdue mortgage note, equivalent to an Endorsement.*

A mortgage was given to L. C. to secure the payment of several promissory notes, falling due in successive years. The note which matured in January, 1871, was assigned to H. D. by the following written assignment endorsed thereon: "January 8th, 1872. I assign the within note to H. D." (Signed) "L. C." The property was afterwards sold under the mortgage, and the proceeds of sale were insufficient to pay the whole mortgage debt. Upon a question as to the proper mode of distributing the fund, it was HELD :

1st. That letters written nearly six months before the assignment and expressing the purpose of the assignee at that time, could not operate to alter or qualify the effect of the assignment as afterwards actually made.

2nd. That what may have been the intention of the mortgagee, or his understanding of the effect of the assignment, it was immaterial to inquire, there being no allegation that any fraud was practiced upon him to induce him to make it.

3rd. That the assignment being in writing, it was not competent to offer parol evidence for the purpose of qualifying or changing its legal operation and effect.

4th. That the intention of the parties must be ascertained from the terms of the assignment itself, the same being free from ambiguity.

5th. That the assignment did not of itself make the mortgagee liable to his assignee as a guarantor of the note.

6th. That the assignment of the note after it became due, was equivalent to an endorsement, and the assignee had not used such diligence in demanding its

payment of the mortgagor as would entitle him to hold the mortgagee liable as endorser.

7th. That the fund should be distributed between the administratrix of the mortgagee and the assignee of the mortgagee, ratably.

APPEAL from the Circuit Court for Somerset County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, GRASON, ALVEY and ROBINSON, J.

*J. W. Crisfield,* for the appellant.

*Henry Page,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

The appellee's intestate held a mortgage of John A. H. Dixon, dated January 3rd 1865 to secure the payment of six promissory notes, each for the sum of $1000—of the same date as the mortgage and payable respectively in *three, four, five, six, seven* and *eight* years after date. The notes were drawn by the mortgagor payable to "Littleton Clayville or order." Those which fell due in January 1868 and 1870 were paid; the interest on all the others was paid to January 1st 1870, and $200 on account of the principal of the note due in January 1869. On the 8th day of January 1872 the note which had fallen due in *January* 1871, was assigned by Littleton Clayville to the appellant in writing, in these words endorsed thereon:

"January 8th 1872, I assign the within note to Harrison Dixon

"Littleton Clayville."

On the 9th day of January 1873 a bill was filed by the appellee praying for a sale of the mortgaged property for

the purpose of paying the balance of the mortgage debt. In that bill it was alleged that the note which matured in January 1871 had been fully paid. In the answer of John A. H. Dixon it was alleged that this note had been assigned to Harrison Dixon, "who has an interest in this suit and is a necessary party to the same."

An amended bill was filed on the 16th day of April 1873, stating that "since the filing of the original bill, your oratrix has discovered and charges that the said promissory note for $1000, which became due on the 1st day of January, 1871, aforesaid, was not paid by the said John A. H. Dixon to the said Littleton Clayville, except so much as is thereon credited, but was assigned by the said Littleton Clayville to one Harrison Dixon, who therefore, your oratrix is advised, is entitled to the relief prayed for in her original bill of complaint."

The record states "and thereupon, by consent of the parties, and by order of the Court here, the said Harrison Dixon is made party complainant in this cause."

On the 16th day of April 1873, the parties, by their solicitors, filed in Court a statement of the amount due on the mortgage debt as follows :

Due on the note due January 1, 1869................$957.86
Due on the note due January 1, 1871 assigned
    to Harrison Dixon.....................................1197.33
Due on note, due January 1, 1872..................... 1197.33
Due on note, due January 1, 1873..................... 1197.33

$4549.85

Annexed thereto is an agreement signed by the solicitors of all the parties, admitting the sum due on the mortgage debt, to be $4549.85, "according to the above statement," and agreeing that in default of payment of the same by the mortgagor, a decree should be passed for the sale of the mortgaged premises &c.

On the following day a decree was passed, in accordance with the agreement, and the sale was made and ratified.

The property did not sell for enough to pay the whole balance of the mortgage debt, and the auditor, by his report and account distributing the trust fund, allowed to Harrison Dixon the whole amount due on the note assigned to him, treating the same as entitled to priority over the claim of the appellee for the balance due the mortgagee.

Exceptions were filed by her to the auditor's report, testimony was taken, and upon the hearing, the Circuit Court sustained the exceptions, and passed an order remanding the cause to the auditor with directions "to state a new account in which he shall allow the claim of Clayville's administratrix a priority over Harrison Dixon, in the distribution of the fund."

From this order the present appeal has been taken.

The decision of the Circuit Court, as appears by their opinion sent up with the record, was based upon the evidence offered by the appellee, showing the facts and circumstances under which the assignment was made, and which in their judgment, were sufficient to prove that it was the understanding and intention of the parties that the appellant "would hold the asssignment only as a security against the mortgagor, and would not be entitled to claim any benefit of the security of the mortgage, until after the residue of the mortgage debt due the mortgagee had been paid." The evidence relied on by the appellee for this purpose consists of the letters of Mr. Crisfield addressed to the mortgagee some time before the assignment was made. They are dated July 24th and 28th 1871, and were written at the instance of John A. H. Dixon, with a view of obtaining further indulgence on his mortgage debt. In the first letter he says, "He" (John A. H. Dixon,) "has now only your debt to contend with, and my purpose in writing is to tell you what he can do with that, if you will take no proceedings to coerce him. He will pay you between this time and the 1st of January $1000, to be applied first to the interest due and unpaid,

and the residue to the principal; and he will pay you as much, in the next year, and more if he can, and so on till the whole is paid; and I am authorized by his brother, Harrison Dixon, to say that he will see that you are paid the $1000, before the first of January next," * * * * * * * * "he is perfectly upright and with his brother's assurance you may safely rely on his promise."

In the second letter, he says, "Mr. Harrison Dixon authorized me to assure you that he would see that his brother paid you $1000 this year. * * * * * I thought then and I suppose if you got $1000, this year, the land would be good for the balance in any event."

Assuming that Mr. Crisfield was authorized by the appellant to make these propositions, and that they expressed the purpose of the latter, to furnish to his brother the money to pay $1000 of the mortgage debt, and such would seem to be their plain meaning, still they could not operate to alter or qualify the effect of what was actually done six months afterwards. The mortgage note was not in fact paid and satisfied; but on the receipt of the money, was assigned. This transaction can have but one construction. It imports that the proposal conveyed by Mr. Crisfield's letters was not insisted on by Mr. Clayville. He accepted the money, not in payment and satisfaction of the note, but voluntarily transferred it without condition or qualification. What may have been his intention, or his understanding of the effect of the assignment it is not material to inquire; there is no allegation that any fraud was practiced upon him to induce him to make it, nor is there any proof to support such an allegation. He may have been ignorant of the legal operation and effect of the assignment, but that does not entitle the appellee to impeach it, or question its validity. Evidence was offered by the appellee of the declarations made by John A. H. Dixon at the time the money was paid and the assignment executed, for the purpose of qualifying its

effect, and of proving that it was the intention of the parties that the same should operate to give the appellant the benefit of the mortgage security, only after the claim of the mortgagee should be fully paid.   This evidence was excepted to in the Court below, and in our opinion it was inadmissible, and must be discarded from our consideration.   The assignment being in writing it was not competent to offer parol evidence for the purpose of qualifying or changing its legal operation and effect.   *Wesley vs. Thomas,* 6 *H. & J.,* 26;   *Watkins vs. Stockett,* 6 *H. & J.,* 435 ; *McElderry vs. Shipley,* 2 *Md.,* 25.

In the case last cited it was said "although a Court of Chancery will, upon proof of fraud, mistake or surprise, raise an equity by which an agreement will be rectified according to the intent of the parties, it will not interfere where the instrument is such as the parties themselves designed it to be.   For if they voluntarily choose to express themselves in the language of the deed they must be bound by it."

It has been well observed that "there is no general rule better settled, or more just in itself, than that parties who enter into contracts and especially contracts in writing, must be governed by them as made, according to their true intent and meaning, and must submit to the legal consequences arising from them."

It is a familiar principle that "the intention of the parties contracting must govern where that can be discovered unless that is in contravention of some rule of law."   *Chew vs. Buchanan,* 30 *Md.,* 367.

This intention must however be ascertained from the terms of the contract itself, where this is in writing and free from ambiguity.   In this case there is no competent evidence of intention except what is expressed in the assignment, upon its legal operation and effect therefore the rights of the parties depend.

The appellant, as assignee, holds one of the notes secured by the mortgage, the others are held by the

administratrix of the mortgagee.   The funds arising from the sale being insufficient to pay the whole mortgage debt, the question arises as to the proper mode of distributing the fund.   A similar question arose in *Chew vs. Buchanan*, 30 *Md.*, 367, but was not decided, a majority of the Court being of opinion that by the true construction of the assignments in that case, the first assignee was entitled to a priority.   Such being construed to be the intention of the parties as expressed by the terms of the assignment.   In this case the appellant claims upon a mere assignment of part of the mortgage debt, with nothing in the terms of the contract to give him any priority, unless this arises from the assignment itself.   Does this give him such priority?   This question, though not decided in *Chew vs. Buchanan*, was then fully argued and many authorities cited.

Upon an examination of the decided cases and a full consideration of the subject, we are all of opinion that the correct rule is that laid down by the Supreme Court of Pennsylvania in *Donly vs. Hays*, 17 *Serg. & Rawle*, 400.

That is to say that "different parties holding respectively the several notes, or being entitled to the several instalments or portions of the debt secured by one mortgage, unless there be something in the terms of the contract to indicate a different intention, stand in *equali jure;* and if the property conveyed by the mortgage be insufficient to pay the whole debt, they are entitled to participate *pari passu* in the fund."

" That the mortgage is as much a security for the last instalment (or note) as the first ; and as between the several holders of the security, whether as original parties, or by assignment, there is no equitable ground for preference or priority."

" The exception or qualification to this rule is where the assignor, by guarantee or otherwise, becomes liable to the assignee for the payment of the instalment, or part of the

debt assigned. In such case the assignor, if he continues to hold the other portion of the debt, would not be allowed to participate in the fund, until the instalment due the assignee is fully paid. 'The effect of a contrary rule would be to lead to a mere circuity of action.'' 30 *Md.*, 378.

It remains to consider whether this case falls within the exception ; and that depends upon the solution of the question whether Clayville is liable over to the appellant upon the note assigned. It was a mere transfer without guarantee. The note was transferred after it had matured, being negotiable on its face, it was still negotiable although overdue. *Annan vs. Houck,* 4 *Gill,* 331 ; *Mudd's Ad'mx vs. Harper,* 1 *Md.,* 113. Now treating the assignment as equivalent to an endorsement, and such we think it must be considered, what liability was thereby incurred by Mr. Clayville. In *Mudd's. Ad'mx vs. Harper,* 1 *Md.,* 113, it was held that the endorsement of a note after it becomes due is equivalent to the act of drawing a bill at sight, citing *Chitty on Bills,* 242, and it was decided that in order to hold the endorser liable in such case, a demand of payment must be made on the drawer in a reasonable time, and notice of non-payment given to the endorser ; as would be necessary in the case of an endorsement of a note payable on demand. Here there is no evidence of any such diligence on the part of the appellant. He held the note without taking any steps for its collection, until after the filing of the bill in April 1873. Under these circumstances there is no ground for holding the assignor liable to him on the note ; and the case falls within the general rule before stated.

The report of the auditor was erroneous in giving priority to the appellant, and the Circuit Court was right in sustaining the exception of the appellee thereto. But we think the Circuit Court was in error in deciding that the claim of the appellee was entitled to priority over that of the appellant in the distribution of the fund, which ought

to be distributed between them ratably. The order of the Circuit Court will be affirmed in part and reversed in part, and the cause remanded for further proceedings in conformity to the views expressed in this opinion, and each party will be required to pay their own costs on this appeal.

> *Order affirmed in part, and*
> *reversed in part, and*
> *cause remanded.*

