THOMPSON, The ISABELLA. See Case No. 7,102.

## Case No. 13,981.

### THOMSON v. BRADFORD et al.

### [7 Biss. 351.] [2]

### District Court, D. Indiana. Jan., 1877.

PRACTICE IN EQUITY — DISTRIBUTION OF FUND — MORTGAGES—PRIORITY OF INSTALLMENTS.

1. When a court of equity obtains control of a fund and the parties entitled to it, it will at once place the money where it will ultimately go.

2. Priority of installments of mortgage debt has its foundation in the rule governing the application of payments, and does not apply to mortgage notes given to secure indorsements.

[This was a bill in equity by John A. Thomson, assignee, against Chandler Bradford and others.]

The petition, which was filed on the 30th

1 [Reported by Hon. William Cranch, Chief Judge.]
2 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

day of April, 1874, recites a previous order of court made in Re Joshua Shipp, in bankruptcy, for the sale of certain lands of Shipp, freed of a mortgage to Harvey Lewis, and alleges that all the lands had been sold except one parcel, in which Chandler Bradford claimed an interest, which was a cloud on the title. The purpose of the bill is to extinguish Bradford's claim. Bradford answered May 29, 1875, setting up title by purchase on the ——— day of ———, 1871. On the 27th of August, 1874, Overstreet and Holmes, assignees of Harvey Lewis in bankruptcy, filed a cross-bill setting up a mortgage by Shipp to Lewis on the lands, executed May 1st, 1875, to secure four notes of that date for $5,000 each, at one, two, three and four years, that the second and third of these notes had been assigned by Lewis to Nathan Powell; that Lewis had become bankrupt, and Overstreet and Holmes were appointed his assignees, and that the first and fourth of these notes, together with the mortgage, had come to them as such assignees as assets of Lewis's estate; prayer for payment out of proceeds of sale. On the 27th of August, 1875, Nathan Powell, having been admitted as a party, answered confessing the cross-bill. He also at the same time filed his cross-bill setting up his title to the two notes by bona fide purchase before maturity, and praying the same relief as Overstreet and Holmes in their cross-bill, and such additional relief as might be equitable. Issues were joined on the bill and cross-bills. After the land was sold and certain payments made, a balance of $5,056.71 was left, applicable to the Lewis mortgage.

Byfield & Howe, for assignees of Lewis.
Baker, Hord & Hendricks, for Nathan Powell.

GRESHAM, Circuit Judge. The only question now in the case is as to the distribution of this fund. Lewis's assignees in bankruptcy, claim it as being the holders of the first of the four $5,000 notes. Powell claims it by assignment from Lewis of the second and third notes. Copies of these notes are annexed to Powell's cross-bill. The assignment of them is in these words: "For value received, I assign the within note to N. Powell, and agree to take it up at maturity. H. Lewis." The testimony taken by the master shows that the mortgage to Lewis was merely to indemnify him as indorser for Shipp on divers notes and bills, the particulars of which as to dates and times of maturity are not given, and that the four notes described in the mortgage were mere fictions.

Whatever right Powell had as against Lewis he has against his assignees in bankruptcy. Powell's rights were in nowise impaired by the bankruptcy of Lewis. The assignees of Lewis can assert no right as against Powell, that Lewis himself might not assert, if he were not a bankrupt. The assignees are

in strict privity with Lewis, and bound by his contract with Powell. The bankruptcy of Lewis conferred no greater right on his assignees to the fund in court than Lewis himself would have had.

It is insisted by Lewis's assignees, that the priority accorded to successive installments of a mortgage debt entitles them as the holders of the first note to the fund in court as against Powell, who holds the second and third notes. But the mortgage notes do not represent installments of indebtedness—they are mere fictions, and had no other effect than to fix the time for paying the damnified indorser Lewis could not have foreclosed against Shipp for the amount of the notes. The priority accorded to successive payments of a mortgage debt has its foundation in the rule governing the application of payments. Goodall v. Mopley, 45 Ind. 355. That rule has no application to this case.

When the second and third notes passed into the hands of Powell before maturity without notice of their character, they ceased to be fictions. Shipp then became liable to Powell, whether Lewis was damnified or not, and if Lewis had sued Shipp to recover money paid on indorsements the latter could have pleaded the assignment of the second and third notes to Powell. As between Shipp and Lewis the assignment to Powell was a payment by Shipp to Lewis. That payment would stand against the first sum that Lewis might be obliged to pay as Shipp's indorser. Lewis had no right to sell Shipp's notes, and in doing so he committed a fraud.

The fund and parties are all in court. Courts of equity are not inclined to favor circuity of action, and they never require a vain or foolish thing. It would seem to be trifling with justice to order the money in court to be paid into the hands of Lewis's assignees and then require them to pay it over to Powell, or to remand Powell to an action to recover it. When a court of equity gets control of a fund and the parties entitled to it, it will at once place the money where it must ultimately go. Dixon v. Clayville, 44 Md. 573.

An order will be entered directing the money in court to be paid to Powell.