DOLORES L. REMSEN *v.* WIRT A. DUVALL, JR.,
ET AL., TRUSTEES, ET AL.

[No. 17, October Term, 1931.]

*Decided December 1st, 1931.*

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Daniel R. Randall,* for the appellant.

*J. Craig McLanahan,* with whom were *James A. Latané* and *France, McLanahan & Rouzer* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

On May 20th, 1928, the Greenberry Beach Company, a corporation, executed to the Greenberry Land & Development Company, Incorporated, hereinafter referred to as the development company, a purchase-money mortgage on a tract of land containing about 301 acres of land, known as the Greenberry Point Farm, in Anne Arundel County, Md., to secure the payment of four notes, one for $15,000, payable November 1st, 1928, one for $15,000, payable November 1st, 1929, one for $25,000, payable November 1st, 1930, and one for $54,500, payable November 1st, 1931, together with interest thereon until paid at six per cent. per annum, payable quarterly on the 20th day of October, January, April and July of each year. At the time that mortgage was executed, Frederick J. Remsen, president of the development company, was indebted to Dolores L. Remsen, his wife, for alimony accrued and unpaid, and for a counsel fee. The mortgaged land was subject to the claim of the Mutual Life Insurance Company of Baltimore for the unpaid balance of a mortgage to it and

other secured and unsecured claims, and the development company with Frederick J. Remsen were indebted to Etta L. Boynton, of Washington, D. C., for money advanced by her for the purchase of the property by a predecessor in title of the Greenberry Beach Company. Mrs. Remsen had filed a bill in the Circuit Court for Anne Arundel County against the development company, in which, on the basis of her claim for alimony, she asserted an interest in the land and prayed for the appointment of a receiver for the company; and Mrs. Boynton had instituted in the Circuit Court for Anne Arundel County an attachment proceeding against the development company and Frederick J. Remsen.

For the purpose of freeing the land from the embarrassment of these liens and claims, the development company, of which Frederick J. Remsen was the principal but not the sole stockholder, proposed to assign the mortgage from the Greenberry Beach Company to it to Wirt A. Duvall and J. Craig McLanahan, hereinafter called trustees, in trust to collect the principal and interest of the mortgage debt, and to pay from the funds thus collected to Mrs. Remsen and Mrs. Boynton amounts which they had agreed to accept as a sufficient consideration for the dismissal of the proceedings respectively instituted by them against the development company. The proposed assignment, among others, contained these recitals and provisions:

"And Whereas, Dolores L. Remsen, wife of Frederick J. Remsen, the principal owner of the stock of the Greenberry Land and Development Company, Inc., has asserted claim for alimony, interest thereon and a counsel fee of Fifty Dollars against the said Frederick J. Remsen, and has filed a suit in the Circuit Court for Anne Arundel County in Equity, entitled, Dolores L. Remsen v. The Greenberry Land and Development Company, Inc., and Frederick J. Remsen, in which proceeding she has asserted an interest in the tract of land described in the mortgage, aforesaid, and has prayed, among other forms of relief, that a Receiver might be appointed for the same, but the said Dolores L. Remsen has agreed, upon the execution of this as-

signment of mortgage, in consideration of the protection afforded to her claim by the terms thereof, to dismiss the suit aforesaid brought by her, and for the purpose of evidencing her consent to the dismissal of said suit, has signed a consent to the execution of this assignment, which is attached hereto. * * *

"Now, therefore, * * * the Assignor does hereby assign and transfer to the Assignees, the mortgage aforesaid, together with the mortgage debt thereby secured, and all the right, title and interest of the Assignor therein, in trust, however as follows: * * *

"Out of the payment due under the terms of said mortgage on November 1, 1929, to pay to Dolores L. Remsen or her duly constituted attorney, the following:

1/3 of $10,532.50 being the total alimony, interest and counsel fee due her as of July 1, 1928 . . . . . . . . . . . . . . . . . . . . . . . .$3,510.83

Interest on said sum of $10,532.50 from July 1, 1928, to November 1, 1929, @ 6% . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 841.26
_____

Aggregating . . . . . . . . . . . . . . . . . . . . . .$4,352.09

—together with any and all alimony, with interest thereon, calculated on an annual basis, which may legally accrue in favor of said Dolores L. Remsen from Frederick J. Remsen, and be unpaid, from July 1st, 1928, to November 1, 1929.

"Out of the payment due under the terms of said mortgage, on November 1, 1930, to pay to said Dolores L. Remsen or her duly constituted attorney, the following:

Balance of alimony, interest and counsel fees to July 1, 1928 . . . . . . . . . . . . . . . . .$7,021.67
Interest on said sum from November 1, 1929, to November 1, 1930, at 6% . . . . . . 421.30
_____

Aggregating . . . . . . . . . . . . . . . . . . . . . . .$7,442.97

—together with any and all alimony which may legally accrue in favor of said Dolores L. Remsen from the said Frederick J. Remsen and be unpaid, from November 1, 1929, to November 1, 1930."

It also provided that, if it were judicially determined, in a pending suit by Charles E. Remsen, a brother of Frederick J. Remsen, against the development company, that he was entitled to an interest in funds remaining in the hands of the trustees after payment of the claims of Mrs. Remsen, Mrs. Boynton, and the insurance company, such interest should be assigned to him out of moneys "yet to be collected under the terms of the mortgage," and in that event payments made to Mrs. Remsen should be charged against the interest of the development company.

Mrs. Remsen, for the purpose of indicating her assent to the proposed assignment and to the offer upon which it was based, executed a written and sealed agreement which contained this provision:

"The said Dolores L. Remsen does hereby assent and consent and authorize the execution and delivery of said assignment to said trustees (with said original mortgage and the promissory notes secured thereby) for the purposes stated therein. Expressly reserving all of her rights and remedies against the said Frederick J. Remsen, in the State of New York, and in her action for a separation pending therein, or otherwise, as well as contempt proceedings, except that she shall credit the account of said Frederick J. Remsen, with payments actually made pursuant to said assignment, but without waiving any rights or remedies against the said Remsen, individually, in the State of New York, or elsewhere, excepting as to the premises included in the said mortgage."

The note for $15,000, payable November 1st, 1928, was paid in due course, and $125.67 paid on account of the note payable November 1st, 1929; but the mortgagor failed to pay either the balance of that note or the interest installments

which accrued and were payable on October 20th, 1929, and January 20th, 1930. As a result of those defaults, J. Craig McLanahan, the attorney named in the mortgage, on April 17th, 1930, docketed a suit in the Circuit Court for Anne Arundel County to foreclose the mortgage; to collect $97,-205.55, the amount of the principal and interest then due and unpaid; and he in due course reported a sale of the mortgaged property to the development company for $76,000. That sale was finally ratified and confirmed, and an account auditing $72,054.76 to the trustees for distribution was filed, and, on February 5th, 1931, finally ratified.

On January 21st, 1931, the trustees filed in Circuit Court No. 2 of Baltimore City the bill of complaint in this case, in which, after alleging in substance the facts recited above (except the final ratification of the auditor's account), they prayed the court to assume jurisdiction of the trust, to determine the respective interests of Mrs. Remsen and Mrs. Boynton in the fund in their hands for distribution, to direct them in the distribution of said fund, and for general relief. In that bill, the trustees took the position that, as the payments to Mrs. Remsen and Mrs. Boynton were to be made out of the proceeds of two definitely ascertained and described notes, one for $15,000, payable November 1st, 1929, and one for $25,000, payable November 1st, 1930, and as these notes were never paid, neither Mrs. Remsen nor Mrs. Boynton had any right to participate at all in the distribution of the fund audited to the trustees out of the proceeds of the mortgage foreclosure. The development company in its answer to the bill definitely adopted the same position. But Mrs. Remsen, in her answer filed on February 14th, 1931, asserted that, under the terms of the assignment, her claim for alimony as liquidated and specified therein was entitled to preference over any and all other claims against the fund in the hands of the trustees for distribution, excepting only the mortgage claim of the Mutual Life Insurance Company of Baltimore. The case was heard on the issues presented by those pleadings, and the mortgage, agreement, records, notes, and other papers referred to above, formally proved.

It appeared from the testimony of Colonel J. Craig Mc-Lanahan, one of the trustees, and from those exhibits: That prior to October 25, 1927, the development company owned the property and had executed a written contract to sell it to William E. Richardson for $125,000; that it further agreed that Richardson might transfer his rights under the contract of sale to a corporation to be formed to develop the property; that he did form the Greenberry Beach Company, a corporation, and did assign his rights under the contract of sale to it; that the development company then conveyed the Greenberry Point Farm to that corporation, which paid $15,-500 in cash on account of the purchase price, and executed to the development company the mortgage described above for the unpaid balance; that when the development company was ready to transfer the property under its contract with Richardson, which he had assigned to the Greenberry Beach Company, it was found to be "plastered all over with liens and mortgages of various kinds," and that suits against the development company asking for the appointment of a receiver had been severally instituted by Charles E. Remsen and by the appellant, and were pending, as was an attachment proceeding against the same company instituted by Mrs. Boynton; that, in order to clear the title to the property, it was agreed, before the mortgage was executed, that, when executed, it should be assigned to trustees in trust to satisfy or settle from moneys to be collected under it the claims, mortgage liens, and litigation which prevented the development company from conveying the property by a good and merchantable title to the purchaser, the Greenberry Beach Company; and that the mortgage and assignment were made in pursuance of that agreement. In addition to that evidence, Colonel McLanahan proved a "Statement of the Receipts and Disbursements" of the trustees, which showed that all claims against the fund, including the claims of Etta L. Boynton and Charles E. Remsen, had been fully satisfied, and that there remained in the hands of the trustees $19,-973.09 to be distributed to Dolores L. Remsen and the development company, the mortgagee, as their interests might

be determined by the court. So that the question finally submitted to the trial court was, what if any part of that sum Dolores Remsen, the appellant here, was entitled to receive. In connection with that inquiry, three theories were considered: (1) That of the trustees and the development company, that under the assignment Mrs. Remsen's claim was payable only out of the proceeds of definitely ascertained and described notes, and as those notes were never paid, her claim failed; (2) that of Mrs. Remsen, that her claim was not only payable out of the entire mortgage debt, but was preferred to all other claims except that of the Mutual Life Insurance Company of Baltimore; and (3) one which the court itself formulated and adopted, that Mrs. Remsen and the development company were co-owners of the fund remaining in the hands of the trustees for distribution, and that therefore said fund should be distributed to them *pari passu*. The ground for the conclusion last stated as given in the opinion of the chancellor is:

"All the three mortgage notes were made the same day and by virtue of the mortgagors' default before or coincident with the maturity of the note due November 1, 1929, they all three become automatically due at the same time. Clearly there is no distinction in point of time in the creation of or date of maturity of the three.

"Under such circumstances the rights of the parties must be controlled by the authority expressed in *Dixon v. Clayville*, 44 Md. 573, that:

" 'Different parties holding respectively several notes, or being entitled to different notes, secured by one mortgage, unless there is something in the terms of the contract to indicate a different intention, stand *in equali jure*, and if the property conveyed by the mortgage be insufficient to pay the whole debt, they are entitled to participate *in pari passu* in the fund.' "

Accordingly, a decree was signed, by which the court assumed jurisdiction of the trust, fixed the allowable claim of Mrs. Remsen at $15,661.78, and directed the trustees to pay

her "72,054.68/99,057.48ths of that amount." From that decree, Mrs. Remsen appealed.

It is apparent from what has been said that the controversy is between the development company and Mrs. Remsen. The development company was the mortgagee named in the mortgage from the Greenberry Beach Company, and it assigned that mortgage to trustees for the expressed purpose of freeing the mortgaged land from the effect of certain suits and proceedings in law and in equity, which had been instituted in the Circuit Court for Anne Arundel County, by paying to the several parties who had instituted those suits and proceedings such parts of the debt secured by the mortgage as they severally agreed to accept in consideration of the dismissal of such suits and proceedings by them.

Upon the facts stated, the controlling question in the case is, what is the relation between the development company, the mortgagee, which alone is entitled to any residuum left after the satisfaction of all allowable claims against the fund which has been substituted for the mortgaged property, and Mrs. Remsen, the appellant in this case. The learned and careful judge who decided the case below decided that they were co-owners of the fund, and therefore should share it *pari passu,* as though their respective interests in it were identical; but we are not able to agree with that conclusion.

In a sense, Mrs. Remsen and the development company were co-owners of the fund, but they were more than that. The deed from the development company to the Greenberry Beach Company, the mortgage from the latter company to the grantor in that deed for $109,500 of the purchase price, the assignment of that mortgage to the trustees, and the agreement executed by Mrs. Remsen and Mrs. Boynton assenting to that assignment, in which, in consideration of the protection it afforded them, they consented to dismiss pending litigation which they had instituted against the development company, the original grantor, and against the land described in the mortgage, were all co-ordinate parts of a single plan, the object and purpose of which was to free the land, which the development company desired to sell, from

liens, claims, and litigation, which prevented it from conveying it by a good and merchantable title. Under the assignment to the trustees, in order to free the title to that mortgaged property from the effect of litigation which Mrs. Remsen and others had instituted, the development company assigned to trustees for the benefit of such litigants the whole mortgage debt. Although it is not directly so stated, the only reasonable inference to be drawn from such facts as are before this court is that the basis of Mrs. Remsen's suit against her husband and the development company was (1) her claim for alimony accrued and accruing at the rate of $125 per month, and (2) the supposed identity of the development company with Remsen. But whether that is so or not is not material, for by the assignment the development company agreed to appropriate a part of its assets, to wit, the mortgage debt, to the payment of Mrs. Remsen's claim, without regard to whether it was against Frederick J. Remsen, in his own name, or against Frederick J. Remsen operating under the name of, and as identical with, the corporation, for the development company by executing the assignment waived any right it may have had to question the validity of Mrs. Remsen's claim, or the identity of Frederick J. Remsen and the development company, for, after her agreement and the execution of the assignment, those questions had been settled and were no longer justiciable so far as they affect any issue in this case. And when by virtue of the assignment the development company appropriated to the satisfaction of Mrs. Remsen's claim so much of the mortgage debt which it owned as might be required to satisfy it, the relations between that company and her were not only those of co-owners of the fund, but also analogous to those of pledgor and pledgee. Nor is that conclusion affected by the fact that, under the terms of the assignment, Mrs. Remsen's claim was to be paid out of the second and third notes secured by the mortgage. The obvious purpose of that provision was to fix the time at which her claim was to be paid, and not to make its payment contingent upon the collection of those notes as they matured according to the terms and tenor of the mort-

gage. For, in the absence of any statement to the contrary, it cannot be assumed that the mortgagee intended that, in the event of a default and foreclosure, it would be entitled to receive any part of the fund realized through the foreclosure until the appellant's claim had been fully paid.

A mortgagor or pledgor who pledges specific property to the payment of his debt is not ordinarily entitled to participate equally with the mortgagee or pledgee in the fund which results from a sale of the mortgaged or pledged property in a proceeding to enforce the lien. That principle is implicit in any such transaction, and must prevail unless the parties otherwise agree. Nor is there anything in the nature of this particular transaction to prevent its application, for the effect of the assignment was nothing more than the pledge of the mortgage debt to secure the satisfaction of claims which had been asserted against the mortgaged property and the mortgagee itself. It would be inequitable and unjust to permit the mortgagee, after it had induced claimants to abandon litigation which they had instituted against the mortgaged property to enforce their claims, to retain for its own use and benefit any part of the mortgage debt, so long as any part of their claims as fixed and liquidated in the assignment remains unpaid.

The appellee very earnestly contends that Mrs. Remsen's claim was based upon a debt due by Frederick J. Remsen; that Remsen and the development company are separate and distinct persons; and that therefore no relation of debtor and creditor existed between the development company and the appellant. But while the claim of Mrs. Remsen may have rested in the first instance on a debt due to her by Frederick J. Remsen, it had nevertheless been asserted, not only against him, but against the corporation on the theory that it and Remsen were one, and, when the corporation assigned property which it owned to satisfy that claim, as to that property at least it is estopped to deny that the relations between it and Mrs. Remsen were those of debtor and creditor. By the terms of her agreement and by the terms of the assignment, Mrs. Remsen accepted the provision

for her benefit in the assignment, not in satisfaction of her rights against Frederick J. Remsen, for she expressly reserved those, but in satisfaction of her claim against the development company and its property. And the assignment itself recites that the consideration for her consent to dismiss the suit she had brought against the development company, as well as against her husband, was the protection which the assignment afforded her claim. After it has obtained in full the benefit for which it bargained, the development company should not be permitted to defeat that consideration by taking for its own use a part of the fund assigned to protect the appellant's claim, as long as any part of that claim remains unpaid.

Technically, the development company neither assumed nor guaranteed the payment of Mrs. Remsen's claim, but the obvious purpose and intent of the assignment was to devote the whole mortgage debt to the payment of that claim as liquidated in the assignment, subject only to the rights of claimants other than the assignor, who by the terms of the assignment were to be paid out of that same fund. Nor is there anything in the case of *Dixon v. Clayville,* 44 Md. 573, in conflict with that conclusion. In this case, the mortgagee assigned the entire mortgage debt to trustees, and neither it nor the appellee has more than an equitable interest therein. In *Dixon v. Clayville, supra,* the mortgagee assigned one of several notes secured by the same mortgage to one Harrison Dixon, so that Dixon and the mortgagee had the legal title to the notes respectively held by them. There being nothing in the nature of the transaction to indicate that the assignor intended the assignee to have any other or greater interest in the mortgage than that actually represented by the note, it was held, in an opinion by Judge Bartol, who wrote the dissenting opinion in *Chew v. Buchanan,* 30 Md. 367, that the assignee was only entitled to share *pari passu* with the administratrix of the assignor, who held the other notes, in the proceeds of a mortgage foreclosure sale which were not sufficient to pay the whole debt. But in that case,

the court quoted with approval a statement in *Donley v. Hays,* 17 Serg. & R. 400, that:

"Different parties holding respectively the several notes, or being entitled to the several instalments or portions of the debt secured by one mortgage, unless there be something in the terms of the contract to indicate a different intention, stand *in equali jure;* and if the property conveyed by the mortgage be insufficient to pay the whole debt, they are entitled to participate *pari passu* in the fund.

"That the mortgage is as much a security for the last instalment (or note) as the first; and as between the several holders of the security, whether as original parties, or by assignment, there is no equitable ground for preference or priority.

"The exception or qualification to this rule is where the assignor, by guarantee or otherwise, becomes liable to the assignee for the payment of the instalment, or part of the debt assigned. In such case the assignor, if he continues to hold the other portion of the debt, would not be allowed to participate in the fund, until the instalment due the assignee is fully paid. The effect of a contrary rule would be to lead to a mere circuity of action. *Chew v. Buchanan,* 30 Md. 378."

That same quotation was used in the dissenting opinion in *Chew v. Buchanan, supra,* but in the majority opinion in that case it was said:

"Whilst some diversity of practice prevails in different states, in applying rules as to priorities in the distribution of funds in court, in the absence of satisfactory evidence of the intention of the parties interested, some adopting the *pro rata* rule of distribution—others, the priority of assignment without regard to priority of payment—others, priority in the order of the maturity of the debts without reference to the priority of assignment; there is a universal concurrence in the principle that the intention of the parties contracting, must govern where that can be discovered unless in contravention of some rule of law. Where the meaning of the

parties has been expressed, or can be inferred from their acts, there has been no difficulty in disposing of the question.

"Their intention must be ascertained by the ordinary rules of construction, and the effect of their acts indicating their purpose, is equivalent to express provision. No particular form of assignment indicative of preference, is essential."

And the expression that where the "meaning of the parties has been expressed, or can be inferred from their acts, there has been no difficulty in disposing of the question" was approved and emphasized in *Dickey v. Pocomoke City Nat. Bank,* 89 Md. 294, 43 A. 33, 35, where it was held that while a "mere" assignment of one note does not give the assignee priority over others retained by the mortgagee, yet, where the conduct of the parties indicated a contrary intent, such intent will be given effect.

The rights of beneficiaries under a deed of trust which are declared by the terms of the instrument as affected by the circumstances attending its execution have no necessary analogy to those of mere partial assignees of a mortgage, and they may, and in this case must, be determined upon different principles. And since here the character of the transaction and the phraseology of the instruments employed to execute it clearly indicate that the parties intended that the claims of the assignee should not, in the event of a deficiency in the fund assigned to protect them, compete with the claim of the appellant, that intention must be given effect. It has been conceded that all claims against the fund other than those of Mrs. Remsen and the development company have been settled and satisfied, and that the fund now in the hands of the trustees for distribution is sufficient to pay in full the claim of Mrs. Remsen under the assignment. The chancellor found the allowable amount of that claim to be $15,661.78, and, as that finding has not been questioned in this court, it will be assumed to be correct, and the trustees should have been directed to pay that amount to the appellant from the fund in their hands. It follows that so much of the decree as denied the right of the appellant to receive that amount from the fund in the hands of the trustees must be reversed, and

366

so much thereof as assumed jurisdiction of the trust and determined the amount of appellant's claim allowable under the assignment affirmed.

> *Decree reversed in part, and affirmed in part, and case remanded that a decree may be entered in accordance with the views expressed in this opinion; the costs to be paid out of the fund in the hands of the trustees.*